**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| VON VOGT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:23-CV-01144-SPM |
| | ) |
| LELAND DUDEK, | ) |
| Acting Commissioner of Social Security,[1] | ) |
| | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

This is an action under 42 U.S.C. § 405(g) for judicial review of the final decision of Defendant Leland Dudek, Acting Commissioner of Social Security (the "Commissioner") denying the application of Plaintiff Von Vogt ("Plaintiff") for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* The parties consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c). (ECF No. 5). Because I find the decision denying benefits was supported by substantial evidence, I will affirm the Commissioner's decision.

---

[1] Leland Dudek is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Leland Dudek is substituted as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

In February 2021, Plaintiff applied for DIB, alleging that he had been unable to work since September 21, 2020, due to a 2 level back fusion ALIF L4-L5/L5-S1, PTSD, anxiety, depression, and meralgia paraesthetica left thigh. (Tr. 174-75, 220-29). His application was denied initially, on reconsideration, and by an ALJ following a hearing. (Tr. 15-61, 91-96, 98-107). The Appeals Council declined to review the case. (Tr. 1-7). Plaintiff has exhausted all administrative remedies, and the decision of the ALJ stands as the final decision of the Commissioner.

With respect to the medical and vocational records, the Court accepts the facts as set forth in the parties' respective statements of fact and responses. The Court will cite to specific portions of the transcript as needed to address the parties' arguments.

## II.  STANDARD FOR DETERMINING DISABILITY UNDER THE ACT

To be eligible for benefits under the Social Security Act, a claimant must prove he or she is disabled. *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Sec'y of Health & Hum. Servs.*, 955 F.2d 552, 555 (8th Cir. 1992). Under the Social Security Act, a person is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment must be "of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he [or she] lives, or whether a specific job vacancy exists for him [or her], or whether he [or she] would be hired if he [or she] applied for work." 42 U.S.C. § 423(d)(2)(A).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. 20 C.F.R. § 404.1520(a); *see also, e.g., McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011) (discussing the five-step process). At Step One, the Commissioner determines whether the claimant is currently engaging in "substantial gainful activity"; if so, then the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(i); *McCoy*, 648 F.3d at 611. At Step Two, the Commissioner determines whether the claimant has "a severe medically determinable physical or mental impairment that meets the [twelve-month duration requirement in § 404.1509], or a combination of impairments that is severe and meets the duration requirement"; if the claimant does not have a severe impairment, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(ii); *McCoy*, 648 F.3d at 611. To be severe, an impairment must "significantly limit[] [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). At Step Three, the Commissioner evaluates whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings"). 20 C.F.R. § 404.1520(a)(4)(iii); *McCoy*, 648 F.3d at 611. If the claimant has such an impairment, the Commissioner finds the claimant disabled; if not, the Commissioner proceeds with the rest of the five-step process. 20 C.F.R. § 404.1520(d); *McCoy*, 648 F.3d at 611.

Prior to Step Four, the Commissioner assesses the claimant's residual functional capacity ("RFC"), 20 C.F.R. § 404.1520(a)(4), which is "the most [a claimant] can still do despite [his or her] limitations," 20 C.F.R. § 404.1545(a)(1). At Step Four, the Commissioner determines whether the claimant can return to his or her past relevant work by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f); *McCoy*, 648 F.3d at 611. If the claimant can perform his or her past relevant work, the claimant is not disabled; if the claimant cannot, the analysis proceeds

3

to the next step. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f); *McCoy*, 648 F.3d at 611. At Step Five, the Commissioner considers the claimant's RFC, age, education, and work experience to determine whether the claimant can make an adjustment to other work in the national economy; if the claimant cannot make an adjustment to other work, the claimant is found disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 404.1560(c)(2); *McCoy*, 648 F.3d at 611.

Through Step Four, the burden remains with the claimant to prove that he or she is disabled. *See also Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009). At Step Five, the burden shifts to the Commissioner to establish that, given the claimant's RFC, age, education, and work experience, there are a significant number of other jobs in the national economy that the claimant can perform. *Id.*; *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. § 404.1560(c)(2).

### III. THE ALJ'S DECISION

Applying the foregoing five-step analysis, the ALJ here found that Plaintiff had not engaged in substantial gainful activity since September 21, 2020, the alleged onset date; that Plaintiff had the severe impairments of degenerative disc disease status post lumbar fusion, major depressive disorder, post-traumatic stress disorder (PTSD), generalized anxiety disorder, and panic disorder; and that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1 (Tr. 20-21). The ALJ found that Plaintiff has the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), with some additional limitations. He can only occasionally climb ramps and stairs; cannot climb ladders, ropes, or scaffolds; can occasionally stoop, kneel, crouch, and crawl; should have no exposure to unprotected heights or hazardous machinery; and should have only occasional exposure to extreme cold or vibrations. He is able to learn, remember, and carry out simple routine tasks and make simple routine work related decisions; can use reason and

judgment to complete those tasks in a timely manner and at an appropriate pace while ignoring or avoiding distractions; should have only gradual changes in job settings and duties; can work close to or with others without distracting them while performing simple routine tasks; should have only occasional interactions with supervisors, coworkers; should have no contact with the general public; and can work a full workday without needing more than the standard breaks. (Tr. 23). At Step Four, the ALJ found Plaintiff was unable to perform his past relevant work as a law enforcement officer. (Tr. 26). At Step Five, relying on the testimony of a vocational expert, the ALJ found that considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform, including representative occupations such as office helper, mail clerk, and photocopying machine operator. (Tr. 27). Accordingly, the ALJ found Plaintiff was not under a disability, as defined in the Act, from September 21, 2020, through the date of the decision. (Tr. 28).

## IV. DISCUSSION

Plaintiff challenges the ALJ's decision on two grounds: (1) that the ALJ committed legal error by failing to discuss the consistency or supportability of the opinion of Dr. Laura Rauscher, and (2) that the ALJ failed to properly assess Plaintiff's statements regarding his lumbar condition and related pain and difficulty.

### A. Standard for Judicial Review

The decision of the Commissioner must be affirmed if it "complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole." *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (quoting *Ford v. Astrue*, 58 F.3d 979, 981 (8th Cir. 2008)); *see also* 42 U.S.C. § 405(g). "Under the substantial-evidence standard, a court looks to an

5

existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 587 U.S. 97, 102-03 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Pate-Fires*, 564 F.3d at 942 (quotation marks omitted). *See also Biestek*, 587 U.S. at 103 ("Substantial evidence . . . means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'") (quoting *Consol. Edison*, 305 U.S. at 229).

In determining whether substantial evidence supports the Commissioner's decision, the court considers both evidence that supports that decision and evidence that detracts from that decision. *Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir. 2012). However, the court "'do[es] not reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.'" *Id.* at 1064 (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir. 2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)).

The Court reviews de novo whether the Commissioner's determination was based on legal error. *Dewey v. Astrue*, 509 F.3d 447, 449 (8th Cir. 2007) (citing *Miles v. Barnhart*, 374 F.3d 694, 698 (8th Cir. 2004), & *Keller v. Shalala,* 26 F.3d 856, 858 (8th Cir. 1994)). "Legal error may be an error of procedure, the use of erroneous legal standards, or an incorrect application of the law." *Collins v. Astrue,* 648 F.3d 869, 871 (8th Cir. 2011) (internal citations omitted).

6

### B. The Opinion of Dr. Laura Rauscher

Plaintiff's first argument is that the ALJ committed legal error by failing to discuss the consistency or supportability of the opinion of Dr. Laura A. Rauscher, Ph.D., LPC, NCC, ACS. The record contains several statements from Dr. Rauscher. On November 4, 2020, Dr. Rauscher completed an "Attending Physician's Statement of Disability" form in connection with Plaintiff's application for duty disability retirement from his job as a police officer. (Tr. 490-92). On this form, she checked boxes indicating that (1) in her opinion, Plaintiff was totally and permanently physically or mentally incapacitated as a result of a personal injury or disease to the extent that he will be unable to perform his duties as an employee, and (2) this disability was the result of a personal injury or disease which arose out of the actual performance of duty as an employee. She wrote, "Patient suffers from severe PTSD, Major Depression and Anxiety, which prevent him from performing any work related duties." (Tr. 491).

On January 5, 2021, Dr. Rauscher drafted a ten-page report in connection with Plaintiff's workers' compensation claim, based on an interview she conducted with Plaintiff. (Tr. 501-10). She summarized Plaintiff's work history and family and medical background, discussed his description of his problems and symptoms (principally mental symptoms arising from his traumatic experiences as a police officer), discussed mental status examination findings from the interview, and reported the results of cognitive testing. She diagnosed post-traumatic stress disorder; major depressive disorder, and other problem related to employment, and she explained the symptoms and findings underlying her diagnoses in light of DSM-5 criteria. She concluded:

> Mr. Vogt's current emotional and behavioral cues indicate an impaired level of functioning at this time. Mr. Vogt presents with emotional numbness, anxiety, symptoms of depression, and impaired concentration and focus. These symptoms appear to be based on the exorbitant amount of trauma that Mr. Vogt was regularly

> exposed to during the course of his job. It is the opinion of this evaluator that Mr. Vogt will demonstrate marked improvement in his mental and emotional well-being once the continual threat of exposure to traumatic and grotesque suicidal and crime scenes are eliminated from his daily life. It is recommended that Mr. Vogt continues with individual counseling to address the numerous emotional symptoms he is experiencing for a significant length of time due to the considerable number of traumatic images and experiences to which he was exposed.

(Tr. 509-10).

On February 2, 2021, Dr. Rauscher completed a report as part of the review process for Plaintiff's claims for Missouri disability retirement benefits. (Tr. 461-64). She began by noting the language of Mo. Rev. Stat. § 70.680 and opined that, using the statute's statements as a guideline, "it is the opinion of this evaluator that [Plaintiff] meets the criteria of: (1) Being mentally incapacitated as an employee due to the required duties as an employee; (2) he is mentally totally incapacitated for the further performance of duty; and (3) that this incapacity will be permanent." (Tr. 461-62). She further opined that "[t]he constant, repeated exposure to violent deaths and suicides, as well as other scenes of human depravity and cruelty, have markedly diminished Mr. Vogt's capacity to work, operate within normal limits on a daily basis, and have greatly interfered with his intrapersonal and interpersonal functioning." (Tr. 462). She stated that Plaintiff "will now experience intensive symptoms that are not only lifelong, but pervasive as well" and "will be under both psychological and psychopharmacological care for the rest of his life." (Tr. 463). She stated that "[h]is reported traumatic experiences, as noted in the DSM-5, will affect him in all realms of his life, including socially, occupationally, and physically; in other words, this diagnosis and the consequences of his symptoms will affect his ability to work, engage in relationships, and it can literally change the functioning of his brain, not to mention affecting his physical health in numerous other ways." (Tr. 463). She opined that "the repeated exposure to traumatic experiences

in his duties as a police officer have rendered [Plaintiff] totally incapacitated for further performance at his job." (Tr. 463).

In the ALJ's decision, the ALJ summarized Dr. Rauscher's findings and stated that she "considered the opinion of Laura A. Rauscher, Ph.D., and found it unpersuasive." (Tr. 26). Plaintiff argues that the ALJ committed legal error in failing to assess the supportability or consistency of Dr. Rauscher's opinions, which Plaintiff asserts is required 20 C.F.R. § 404.1520c. In response, Defendant does not argue that the ALJ analyzed the supportability and consistency factors. Instead, Defendant suggests that no such analysis was required because Dr. Rauscher's statements are not medical opinions that require evaluation under § 404.1520c. Defendant also argues that Dr. Rauscher's statements are consistent with the ALJ's finding that Plaintiff could not perform his past relevant work as a police officer.

For claims filed after March 27, 2017, a "medical opinion" is defined, in relevant part, as "a statement from a medical source about what [the claiman] can still do despite [the claimant's] impairment(s) and whether [the claimant] ha[s] one or more impairment-related limitations or restrictions in the following abilities: . . .(ii) [the claimant's] ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting . . . ." 20 C.F.R. § 404.1513(a)(2). On the other hand, "judgments about the nature and severity of [a claimant's] impairments, [a claimant's] medical history, clinical findings, diagnosis, treatment prescribed with a response, or prognosis" are considered "other medical evidence" and not medical opinion evidence. § 404.1513(c)(3).[2] When a medical source

---

[2] For claims filed before March 27, 2017, the definition of "medical opinions" is broader and includes statements that are now considered "other medical evidence." See 20 C.F.R. § 404.1527(a)(1) ("Medical opinions are statements from acceptable medical sources that reflect

9

provides a "medical opinion," the ALJ must evaluate the persuasiveness of the medical opinion in light of several factors set forth at 20 C.F.R. § 404.1520c(a)-(c). An ALJ's failure to address either the "supportability" factor or the "consistency" factor with respect to a particular medical opinion is a legal error that may require remand. *See, e.g., Starman v. Kijakazi,* No. 2:20-CV-00035-SRC, 2021 WL 4459729, at *5 (E.D. Mo. Sept. 29, 2021) (citations omitted).

After careful review of the regulations, the relevant case law, and Dr. Rauscher's reports, the Court finds that none of Dr. Rauscher's statements are "medical opinions" that the ALJ was required to analyze under 20 C.F.R. § 404.1520c, and thus there is no legal error that requires remand.[3]

Several of Dr. Rauscher's statements are opinions regarding Plaintiff's inability to work, and it is well established that such opinions are do not require analysis under § 404.1520c. A statement that a claimant is or is not "able to work, or able to perform regular or continuing work" is a statement on an "issue[] reserved to the Commissioner" that is "neither valuable nor persuasive to the issue of whether [the claimant] is disabled," and the ALJ is not required to analyze such evidence under § 404.1520c. 20 C.F.R. § 404.1520b(c). *See also, e.g., Cassandra O. v. Kijakazi*, No. 22-CV-1587 (ECT/DTS), 2023 WL 3855306, at *4 (D. Minn. Apr. 11, 2023) (stating, "the

---

judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions.").

[3] Plaintiff argues that the Court should not consider whether Dr. Rauscher's statements were "medical opinions," because the ALJ found them to be medical opinions. The Court finds this argument unpersuasive. Plaintiff's argument is that the ALJ committed *legal error* in failing to address the persuasiveness of Dr. Rauscher's medical opinion under 20 C.F.R. § 404.1520c. The Court cannot find a legal error without first finding that this regulation applies to the opinion in question. It would be nonsensical for the Court to find legal error based on an ALJ's failure to apply a regulation to an opinion to which the regulation does not apply and then remand the case so the ALJ can apply a regulation to an opinion to which it does not apply.

law is clear that statements about whether a claimant can work are not medical opinions, because they address an issue reserved for the Commissioner"), *report and recommendation adopted*, No. 22-CV-1587 (ECT/DTS), 2023 WL 3558155 (D. Minn. May 18, 2023); *Murphy v. Kijakazi*, No. 1:20 CV 154 RWS, 2021 WL 3033404, at *4-*6 (E.D. Mo. July 19, 2021) (finding statements regarding Plaintiff's hireability, decreased ability to work a full day, and permanent disability or incapacity were statements on issues reserved to the Commissioner that the ALJ had no duty to analyze). Statements that fall into this category include Dr. Rauscher's statements that Plaintiff was "mentally incapacitated as an employee," that Plaintiff was "mentally totally incapacitated for the further performance of duty," that "this incapacity will be permanent," that his exposure to traumatic experiences has "markedly diminished [his] ability to work," that his exposure to traumatic experiences has "rendered [him] totally incapacitated for further performance at his job," and that "the consequences of his symptoms will affect his ability to work." The ALJ did not commit legal error by not analyzing such statements under the regulations governing evaluation of medical opinions.

      Dr. Rauscher's other statements also do not satisfy the definition of "medical opinion" in the regulations. Although Plaintiff does not specify which statements in Dr. Rauscher's reports he believes satisfy the definition of a "medical opinion," the statements most likely to qualify appear to be those indicating that Plaintiff had an "impaired level of functioning," that he "presents with emotional numbness, anxiety, symptoms of depression, and impaired concentration and focus," that his exposure to traumatic experiences has "markedly diminished [Plaintiff's] capacity to . . . operate within normal limits" and has "greatly interfered with his intrapersonal and interpersonal functioning," that his traumatic experiences "will affect him in all realms of his life, including socially, occupationally, and physically," and that his "diagnosis and the consequence of his

11

symptoms will affect his ability to . . engage in relationships, and it can literally change the functioning of his brain, not to mention affecting his physical health in numerous other ways." District courts within the Eighth Circuit have consistently found that statements such as these—that describe a claimant's impaired or limited functioning in general terms but do not address what the claimant can still do despite his or her impairments—do not satisfy the definition of "medical opinion." *See Cassandra O.*, 2023 WL 3855306, at *4  (holding a therapist's form was not a "medical opinion" because "[w]hile the form lists limitations that are presumably related to [the plaintiff's] impairment ('difficulty w/attention, focus, memory, distress tolerance'), a statement must address both functioning ('what you can do') *and* impairment-related limitations in job-related functioning to be considered a 'medical opinion'"), *report and recommendation adopted*, No. 22-CV-1587 (ECT/DTS), 2023 WL 3558155 (D. Minn. May 18, 2023); *Leslie M. B. v. Kijakazi*, No. 22-CV-1898 (TNL), 2023 WL 5672759, at *4 (D. Minn. Sept. 1, 2023) (holding evaluation that stated that Plaintiff's symptoms "may contribute to impairments in [Plaintiff's] concentration, attention, emotional and behavioral dysregulation, and memory which may impede [Plaintiff's] abilities to communicate with others effectively, complete the activities required for daily living, and engage in reciprocal social interactions with others" was not a medical opinion because it did not "address what Plaintiff 'can still do despite [those] impairments'") (quoting *Cassandra O.*, 2023 WL 3855306, at *4); *Pierce v. Kijakazi*, No. 4:20 CV 1426 CDP, 2022 WL 888141, at *7 (E.D. Mo. Mar. 25, 2022) (holding report in which provider concluded that the claimant was unable to work and circled criteria stating that "the symptoms cause clinically significant distress or impairment in social, occupational, or other important areas of functioning," and "problems in concentration" was not a "medical opinion" because "none of these statements indicate what [the claimant] 'can still do' despite her impairments""); *Foster v. Kijakazi*, No. 20-

12

CV-2058-LRR, 2022 WL 412729, at *6 (N.D. Iowa Jan. 25, 2022) ("Dr. Oleskowicz's report is not an 'opinion' under the rules because she did not explain what Claimant could do despite his impairments. Dr. Oleskowicz merely relayed that Claimant could not handle the multiple stimuli at his former job, felt overwhelmed, had panic attacks twice a week on average, and had to leave 'the job.'") (internal citations omitted), *report and recommendation adopted sub nom. Foster v. Comm'r of Soc. Sec.*, No. 20-CV-2058-LRR, 2022 WL 407381 (N.D. Iowa Feb. 9, 2022)) (internal citations omitted); *Murphy*, 2021 WL 3033404, at *4, *7 (holding statements that "chronic pain decreased [the claimant's] ability to work [a] full day" and that his back pain "limits duration in one position" were not medical opinions because they "did not provide any information about what [the claimant] 'can still do' despite his impairments"; noting that "[w]hen Congress revised the regulations, it explicitly made what a claimant 'can still do' the *central* component of the definition [of "medical opinion"]") (citing Revisions to Rule Regarding the Evaluation of Medical Evidence, 2016 WL 4702272, 81 Fed. Reg. 62560-01 (Sept. 9, 2016)).

District courts outside the Eighth Circuit have reached similar conclusions. *See Garcia Torres v. Comm'r of Soc. Sec.*, No. CV 22-1481 (MEL), 2024 WL 1886455, at *5 (D.P.R. Apr. 30, 2024) (holding report did not qualify as a medical opinion because "[w]hile it does indicate Plaintiff's limitations in her ability to concentrate, remember things, and work under pressure, the report does not state what Plaintiff can still do despite her impairments" and because the "broad assertions" in the report "provide barely any guidance as to what Plaintiff can still do in the workplace and offer little insight, if any, into Plaintiff's functional limitations"); *Rice v. O'Malley*, No. CV H-23-2530, 2024 WL 3852339, at *6-*7 (S.D. Tex. Aug. 16, 2024) (holding report did not qualify as a medical opinion where although it "arguably discusses [the claimant] having impairment-related restrictions in her mental abilities by documenting [her] 'diminished ability to

13

concentrate,' the report does not opine on what [the claimant] 'can still do despite [her] impairment(s)'"); *Ruben M. v. O'Malley*, No. CV 23-2349-JWL, 2024 WL 3104579, at *10-*11 (D. Kan. June 24, 2024) (holding doctor's statements that Plaintiff had severe psychiatric problems that significantly impact his interpersonal, social, academic, and occupational functioning, including an inability to tolerate frustration without becoming emotionally intense and argumentative, an inability to tolerate normal interpersonal relationships and interactions without feeling angry, an inability to tolerate a normal work load or normal levels of work stress, and attention and concentration problems, did not qualify as a medical opinion because although it "contains numerous conclusory statements regarding Plaintiff's impairments, it does not contain any functional limitations or explanation of any limitations in Plaintiff's abilities" and "appears to be merely a conclusory decision regarding Plaintiff's VA disability"); *Kathleen M. v. Comm'r of Soc. Sec.*, No. 8:20-CV-1040 (TWD), 2022 WL 92467, at *4 (N.D.N.Y. Jan. 10, 2022) (doctor's letter stating that the claimant struggled with being organized, staying on task, controlling her impulses, making decisions, and meeting deadlines was not a medical opinion "because it does not discuss what Plaintiff could still do despite her impairments").

Like the statements in the above cases, Dr. Rauscher's statements do not address what Plaintiff can still do despite his impairments, nor do they contain specific descriptions of Plaintiff's functional limitations. Thus, these statements do not constitute "medical opinions," and the ALJ did not err in failing to evaluate them under 20 C.F.R. § 404.1520c.

Finally, even assuming, *arguendo*, that one or more of Dr. Rauscher's statements could be considered a medical opinion, the Court finds any such error harmless. Plaintiff does not point to any specific statement of Dr. Rauscher that, if credited, could have changed the outcome of this case, nor does Plaintiff point to any aspect of the ALJ's decision that might have been different

14

had the ALJ found Dr. Rauscher's statements more persuasive. Dr. Rauscher's opinion that Plaintiff could not perform his work as a police officer is consistent with the ALJ's finding at Step Four that Plaintiff was incapable of performing his past relevant work as a law enforcement officer. Dr. Rauscher's other statements regarding Plaintiff's mental limitations are so vague that it does not appear that they would, even if credited, support any limitations beyond those in the RFC, which already includes limitations that account for impairments in concentration, focus, and interpersonal functioning, including limitations to simple, routine tasks; simple work related decisions; only occasional interactions with supervisors and coworkers; and no contact with the general public.

### C.  Plaintiff's Statements Regarding His Lumbar Condition

Plaintiff's second argument is that the ALJ failed to properly assess Plaintiff's statements regarding his lumbar condition and related pain and difficulty. In his Function Report and at the hearing before the ALJ, Plaintiff reported, *inter alia*, that he has back pain and leg burning that limit his ability to lift, walk, stand, and sit; that he can lift around 10 pounds and walk for around 50 to 75 yards before his back pain and leg burning require him to stop and rest; that he can only stand for about ten minutes before his back pain and leg burning that require him to sit; that he can only sit for about 15 to 20 minutes before he needs to get up; that stair climbing is hard on his back; that he can no longer climb ladders; and that trying to do chores such as vacuuming causes his back to hurt. (Tr. 53-54, 231-38).

In evaluating the intensity, persistence, and limiting effects of an individual's symptoms, the ALJ must "examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other

15

relevant evidence in the individual's case record." Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304, at *4 (Oct. 25, 2017). In examining the record, the ALJ must consider several factors, including the claimant's daily activities; the duration, intensity, and frequency of the symptoms; precipitating and aggravating factors; the dosage, effectiveness, and side effects of medication; any functional restrictions; the claimant's work history; and the objective medical evidence. *See Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009) (citing *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008), & *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984)). *See also* SSR 16-3p, 2017 WL 5180304, at *7-*8; 20 C.F.R. § 404.1529(c)(3). Social Security Ruling 16-3p states that "[t]he determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p, 2007 WL 5108034, at *10. However, "[t]he ALJ is not required to discuss each *Polaski* factor as long as 'he acknowledges and considers the factors before discounting a claimant's subjective complaints.'" *Halverson v. Astrue*, 600 F.3d 922, 932 (8th Cir. 2010) (quoting *Moore*, 572 F.3d at 524).

After review of the ALJ's decision and the entire record, the Court finds that the ALJ conducted an adequate assessment of the symptoms associated with Plaintiff's lumbar impairment, consistent with SSR 16-3p and the relevant regulations, and that the assessment is supported by substantial evidence. At the outset, the Court notes that the ALJ did give significant weight to Plaintiff's subjective complaints of pain, limiting Plaintiff to light work with no climbing ladders, ropes, or scaffolds and only occasional stair climbing, ramp climbing, stooping, kneeling, and crawling. (Tr. 23). To the extent that the ALJ did discount Plaintiff's subjective complaints, a review of the decision as a whole demonstrates that the ALJ adequately considered several of the

16

relevant factors in evaluating Plaintiff's complaints. The ALJ expressly cited 20 C.F.R. § 404.1529 and SSR 16-3p, discussed the allegations related to Plaintiff's back pain in Plaintiff's Function Report and hearing testimony, discussed the relevant medical evidence, and specifically made a finding that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Tr. 23-24). The ALJ reasonably considered that Plaintiff's lumbar fusion occurred "well prior to his alleged onset date while he was still working at substantial gainful activity levels with chronic back pain." (Tr. 24, 226, 415, 658). She reasonably considered that Plaintiff's course of treatment consisted of Percocet through his primary care physician. (Tr. 24, 415-16, 658). She also reasonably considered the objective findings in the record, noting that an examination by a consultative examiner was "largely physically normal with a steady gait, normal sensation, and generally full strength, but decreased range of motion in the lumbar spine, moderate difficulty squatting and rising from that position, and 4/5 strength in his lower extremities with hip abduction." (Tr. 24, 660, 662-63).[4] The Court also notes that the record contains minimal treatment for Plaintiff's lumbar impairment and that at a January 2021 psychological examination, the examiner noted that Plaintiff "reported no longstanding issues as a result" of his lumbar fusion. (Tr. 595).

For the above reasons and for the other reasons discussed in Defendant's brief, the Court finds that the ALJ conducted an adequate evaluation of Plaintiff's claimed symptoms, considered

---

[4] Plaintiff takes issue with the ALJ's characterization of the consultative examination as "largely physically normal," noting that it contained several abnormal findings. The Court finds that the ALJ's characterization does not undermine the ALJ's assessment of plaintiff's subjective complaints. The consultative examination did include numerous normal findings; more importantly, it is clear from the ALJ"s discussion of that examination that she recognized and considered the abnormal findings in the decision, several of which she expressly discussed.

17

relevant factors, and gave good reasons, supported by substantial evidence, for partially discounting those symptoms. The Court emphasizes that the evaluation of a claimant's subjective symptoms is "primarily for the ALJ to decide, not the courts." *Igo v. Colvin*, 839 F.3d 724, 731 (8th Cir. 2016) (quotation marks omitted). The ALJ's decision fell within the available zone of choice, and the Court cannot disturb that decision even if the evidence might have supported a different conclusion.

V. **CONCLUSION**

For all of the foregoing reasons, the Court finds the ALJ's decision is supported by substantial evidence. Accordingly,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the decision of the Commissioner of Social Security is **AFFIRMED**.

_____
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 24th day of February, 2025.